CHARLES A. HOLLAND, SR., et al., Plaintiffs, *v.* SPEAR & Co., INC., et al., Defendants.

Municipal Court of the City of New York, Borough of Manhattan, May 6, 1948.

*M. S. & I. S. Isaacs* for defendants.

*Duberstein & Nimkoff* for plaintiffs.

SCHWEITZER, J. This is a motion made by the defendant, The Baron De Hirsch Fund, to dismiss the complaint as to the plaintiffs John D'Ambra and Ernest D'Ambra only, pursuant to the provisions of subdivision 5 of rule 107 of the Rules of Civil Practice upon the ground that there is an existing final judgment rendered on the merits determining the same cause of action between the parties. On or about September 20, 1944, these plaintiffs commenced an action against the moving defendant, the indorsement on the summons reading as follows:

" First cause of action: Action by plaintiff, Ernest D'Ambra, in the sum of $437. and action by plaintiff, John D'Ambra in the sum of $266, making a total of $703., against the defendant, as and for liquidated damages, pursuant to the Fair Labor Standards Act of 1938, by reason of the plaintiff's employment, on premises No. 7–9 West 18th Street, New York City. Second cause of action: Action in the sum of $125. as and for a reasonable attorney's fee."

It appears undisputed that the said action was settled by a stipulation executed by the parties for a total of $527.25 upon which the said plaintiffs entered judgment on May 24, 1945. There was recited in said stipulation of settlement the following: " Whereas defendant honestly disputes that the plaintiffs or either of them worked the number of overtime hours alleged by them to be worked during their employment by the defendant and there is existing an actual and substantial bonafide difference of opinion as to the number of hours actually worked * * *."

In addition thereto the following statement was also contained therein: " That said judgment shall be a final and conclusive adjudication on the merits of all issues, claims and causes of action alleged or which could have been alleged in this

suit: * * * 2. Said judgment shall represent the full measure and extent of defendant's liability for overtime compensation, liquidated damages, attorneys' fee, interest, costs and disbursements.''

The judgment referred to was entered on May 24, 1945. The stipulation of settlement, reciting the consent to the entry of judgment, was annexed to the judgment.

On or about the 5th day of September, 1947, these same plaintiffs commenced the instant action against the moving defendant and others. The indorsement on the summons contained the following language: '' Action for additional compensation, liquidated damages and attorneys' fees under the Fair Labor Standards Act of 1938, arising out of the employment of the plaintiffs by the defendants as service employees at the building located at 7–9 West 18th Street, New York City.''

The moving defendant has interposed the following answer: '' General Denial, Accord and Satisfaction, Release and Estoppel ''. It contends that the original judgment, having been paid, constitutes a final and binding adjudication as to all claims of the affected plaintiffs for overtime compensation and attorneys' fees against this defendant up to the date of the institution of that suit, i.e., September 20, 1944.

The plaintiffs' opposition to the motion to dismiss is based upon the contention that the present cause of action is predicated upon a new and independent claim which these plaintiffs were not bound to join in the original action. They argue furthermore that, even if the claim is found to be single, the fact that they had been misled by the moving defendant's own behavior into having omitted it from the earlier action should deprive that defendant of a defense of *res judicata* springing from its own deception.

At first impression it would appear that the issue of law for this court to determine is whether the original cause of action of these plaintiffs was such a single and indivisible claim as to permit the movant to invoke the principal of law which forbids the splitting of a cause of action. I believe, however, that the real question is whether, even assuming the first cause of action to have been single and indivisible, the plaintiffs may still pursue their claim for '' additional compensation '' because of the peculiar circumstances of this case.

To understand the nature of the original cause of action it becomes expedient to briefly state the history of the litigation. These plaintiffs were building service employees employed by

the moving defendant in a loft building at premises No. 7–9 West 18th Street, in New York City. Up until April, 1942, they had been employed under an agreement known as the " Sloane Agreement " and, upon its termination, these plaintiffs, through their union representatives and the defendant, agreed to negotiate a new contract the terms of which were to be retroactive to April 20, 1942. Such an agreement was ultimately reached in September, 1942, retroactive to April 20, 1942, and the same became known as the " National War Labor Board Agreement ". Concededly the terms of these plaintiffs' employment were covered by the provisions of that agreement.

On May 5, 1947, the Supreme Court of the United States decided that there was only illusory compliance by the employer with the provisions of the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*), and that the formula contained in the wage agreement entered into by the direction of the National War Labor Board defining the " hourly rate " was not the " regular rate " of pay within the meaning of the Fair Labor Standards Act. (*149 Madison Ave. Corp.* v. *Asselta,* 331 U. S. 199.)

The impact of this decision was obvious. It was then for the first time judicially determined that, from the retroactive effective date of the National War Labor Board agreement (that is, from April 20, 1942) to the termination of these plaintiffs' employment, each employee was entitled to certain " overtime " payments within the meaning of the Fair Labor Standards Act. It was not until the determination of that case on May 5, 1947, that these plaintiffs became aware of their rights to " overtime " compensation under the National War Labor Board agreement.

The affidavit submitted by the attorney who had represented these plaintiffs in the original cause states that he was retained immediately prior to September 20, 1944, to institute suit against the moving defendant for overtime compensation for a period of time expressly limited to April 20, 1942; and it is not disputed that the claim for such overtime compensation was mathematically computed so as to cover the period of employment which terminated under the Sloane contract — that is, to April 20, 1942. The attorney's affidavit further states that these plaintiffs believed there had been proper compliance by the moving defendant with the provisions of the Fair Labor Standards Act for the period following the execution of the National War Labor Board contract. One may reasonably deduce that all

parties felt, after the execution of this latter contract, that there was then proper compliance with the provisions of the Fair Labor Standards Act.

No doubt exists in the mind of this court that the purported claims of these plaintiffs do not stem from the provisions of either the Sloane or the National War Labor Board agreements. They have their birth only because of the beneficial provisions of the Fair Labor Standards Act of 1938. It may, therefore, be stated that the causes of action of these plaintiffs were single and indivisible at the time of their commencement, having their respective origins under the provisions of a single act and necessarily giving rise to but a single cause of action. If the plaintiffs' position is to be sustained, it must be found to exist in the fact that an exception is made in our law where it appears that the claimant did not have knowledge of his entire claim at the time of the commencement of his action, and where it further appears that no negligence can be ascribed to the suitor because he failed to learn of the entirety of his claim at such time.

The rule against splitting a single cause of action is too well established in our law to warrant any extended discussion of the authorities sustaining it. If a party sues and recovers a portion of an indivisible claim, he is barred from suing and recovering the residue. (*Kennedy* v. *City of New York,* 196 N. Y. 19.) It is a salutary rule of public policy designed to prevent vexatious and oppressive litigation and presupposes the fact that the plaintiff who sues for only a part of his claim has acted inequitably — knowing that he was causing '' unnecessary vexation to the defendant, or at least careless whether or not he caused such vexation.'' (*White* v. *Adler,* 289 N. Y. 34, 42.) Such conduct by a suitor necessarily implies a consciousness on his part of the consequences of his conduct, and in cases of inexcusable neglect on his part such consciousness is imputed to him. (*Gedney* v. *Gedney,* 160 N. Y. 471.)

It is clear from the authorities that the rule against splitting causes of action is not adhered to where it appears that the plaintiff had no knowledge of the items of damage omitted from his original cause of action, and where it does not appear that such lack of knowledge is due to the fault or neglect of the plaintiff. The exception is succinctly stated by the Court of Appeals in *Gedney* v. *Gedney* (*supra,* p. 475): '' Of necessity, the splitting up of accounts, or demands, implies, on the part of the suitor, a conscious act, or knowledge.''

The latest expression of judicial authority appears to be elaborately set forth in the case of *White* v. *Adler, (supra)*. The facts in that case are peculiarly similar to the facts in the instant case. There, as in this case, the lack of knowledge of the claimant was ascribed to the fact that there had not been a full judicial determination of the claimant's right at the time the first cause of action was commenced. In the *White* case *(supra)*, also, the liability sought to be imposed upon the defendant was created by a statute fraught with a sound public policy and comparable to the liability sought to be imposed upon this moving defendant, since it cannot be doubted that the beneficial provisions of the Fair Labor Standards Act are similarly a legislative expression of public policy. LEHMAN, Ch. J., speaking for a unanimous court there said: "The courts of other jurisdictions have noted that a rigid application of the rule against splitting of causes of action at times would produce injustice. It has been said that exceptions should be recognized ' as the evident justice of the particular case requires.' [Citing cases.] * * * The defendants have not been vexed or harassed, unreasonably, by a multiplicity of actions brought to enforce the liability imposed upon them by law. When the prior action was commenced and decided the courts had not yet decided the grave legal question whether stockholders were subject to liability ' for the amount of their stock ' which they had assigned and which had been presented on December 10th for transfer upon the books of the bank. * * * The rule against splitting a cause of action is one made by judges to promote the public policy of the State. It should not be applied ' to frustrate the purpose of its law or to thwart public policy.' *(United States* v. *Pan-American Petroleum Co.,* [55 F. 2d. 753] *supra.)*"

Examining the facts in the instant case in the light of the general rule and the public policy which prompted its enactment and the exceptions thereto, I can see no bar to the claims now presented which would warrant their summary dismissal. It is not disputed that the period covered and the claim for overtime presented in the instant case were in no wise involved in the prior action. The prior claims were concerned only with the period of employment under the Sloane contract — that is, to April 20, 1942 — and the suit for overtime was restricted to that period exclusively and in no way involved the claims now before the court. This is of determinative significance, since the statutes and the courts recognize that no compromise is

valid unless there is a bona fide dispute over the exact liability. (*Weiss* v. *Testrite Instrument Co.*, 272 App. Div. 696.)

Upon what theory can it be held that there was or could have been a settlement of a bona fide dispute over items never considered in any wise at all and not in the minds, hence not in the intents, of the parties? Assuming, therefore, that there was no dispute over the actual exact liability involved in the claims presented in the instant case, there could have been no valid compromise of such claims, and there would have to be a trial of the same.

It cannot be disputed that the prior judgment was essentially a compromise between the parties of the claims *then* presented. The record and stipulation upon which they rest demonstrate that fact. Translating that stipulation into a judgment would not change the fact, though it merged it in the judgment. In applying the bar of *res judicata* the court looks into the record and is not entirely precluded or restricted by the judgment itself.

It therefore appears that the parties had previously compromised only certain particular claims to overtime and that pursuant to such compromise a judgment was entered. It is not even disputed that the plaintiffs were unaware of the existence of their entire claims at the time of the institution of the first cause. No negligence has been attributed to them because of this lack of knowledge and it may fairly be said that they first learned of the existence of such claims at the time of the judicial declaration of its existence on May 5, 1947. I know of no concept in our principles of justice which permits a litigant to invoke an equitable defense to accomplish an inequity. Under these circumstances the defendant is barred from invoking the defense of *res judicata*. The motion is in all respects denied.